

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/30/2016

IN RE: §
NATASHA BASCUS, *et al* § MISC CASE NO: 15-307
 §

## MEMORANDUM OPINION

The J. Freeman Law Firm *et al* ("Respondents")[1] filed a Jury Demand in Case No. 15-34173 at ECF No 97. On January 4, 2016, the Court requested the parties brief the issue of whether the Respondents are entitled to a jury trial in this consolidated proceeding. The J. Freeman Law Firm and the United States Trustee timely submitted briefs. (ECF No. 70-72). On consideration of the briefing and applicable law, the Respondents do not have a Seventh Amendment right to a jury trial in this case.

### Factual Background

On April 6, 2015 Rafael Espinoza filed a chapter 13 bankruptcy case with the assistance of Natasha Bascus, a bankruptcy petition preparer. (Case No. 15-31909). On May 26, 2015, Mr. Espinoza's case was dismissed for deficiencies. (*Id.* at ECF No. 19). Mr. Espinoza filed a second case on August 4, 2015, this time without the assistance of a bankruptcy petition preparer. (ECF No. 15-34173). In Mr. Espinoza's second bankruptcy case, the Court ordered Ms. Bascus appear and show cause why she should not be sanctioned for, *inter alia*, violating §§ 110 and 526, 527, and 528 of the Bankruptcy Code while acting as a petition preparer in the first bankruptcy case. (*Id.* at ECF No. 17).

At Ms. Bascus's show cause hearing on September 29, 2015, Ms. Espinoza, the Debtor's wife, testified that (1) she paid $3,185.00 to the J. Freeman Law Firm in order to obtain

---

[1] J. Freeman Law Firm, Daniel Saxton, Jeff Lalo, Robert Mendoza, RA Support Services, Inc., Freeman Saxton, P.C., Natasha Bascus, and David McKeand.

mortgage relief services; (2) Natasha Bascus contacted her on behalf of the J. Freeman Law Firm to help prepare the Espinoza's bankruptcy petition, and (3) Bascus's fee was paid by the J. Freeman Law Firm.  (*Id.* at ECF No. 35).  Based on this testimony, the Court issued a preliminary injunction against Ms. Bascus, and ordered the J. Freeman Law Firm appear and show cause why it should not be sanctioned for violating 11 U.S.C. §§ 526, 526, and 528.  (*Id.* at ECF No. 34-35).  A hearing was scheduled for November 3, 2015 to address both orders.

On November 3, 2015, David McKeand appeared on behalf the J. Freeman Law Firm. Ms. Bascus appeared telephonically through counsel.  At the hearing, several witnesses testified regarding their experience in hiring the J. Freeman Law Firm and their subsequent referral to Ms. Bascus.  The Court issued a preliminary injunction enjoining the "J. Freeman Law Firm, and all persons working in concert with it (which entities include, at a minimum, Freeman Saxton, PC and RA Support Services, Inc., and each attorney employed by the J. Freeman Law Firm), and each of their successors and assigned . . . from violating § 526, § 527 and § 528 of the Bankruptcy Code." (Case No. 15-24173 at ECF No. 52).  The Court also issued an order to show cause why Ms. Bascus should not be arrested for failing to appear.  (*Id.* at ECF No. 53). Both matters were set for a hearing on December 8, 2015.

After the conclusion of the December 8, 2015 hearing, the Court issued another order consolidating several cases that involved Ms. Bascus and/or the J. Freeman Law Firm into this miscellaneous proceeding.  (ECF No. 56).  The Court ordered:

> Daniel Saxton, Jeff Lalo, Robert Mendoza, RA Support Services, Inc., Freeman Saxton, P.C., and David McKeand (jointly, the "Respondents") are ordered to appear and show cause why they should not be sanctioned for violating, or for working in active concert with others to violate, 11 U.S.C. §§ 110, 526, 527 and 528.  From the evidence introduced to date in this adversary proceeding, it appears that the Respondents engaged in a coordinated effort in multiple jurisdiction in the United States to avoid both the petition preparer requirements contained in § 110 of the bankruptcy Code and the Debt Relief Agency

>requirements contained in §§ 526, 527, and 528 of the Bankruptcy Code. The Respondents appear to solicit clients by offering mortgage relief services. It appears that part of the plan of conduct of the Respondents i[s] to utilize bad faith chapter 13 bankruptcy filings in efforts to delay foreclosures when mortgage relief is not timely obtained. These actions appear to include advising clients that bankruptcy is a viable course of conduct for delaying foreclosures, and then assisting the clients in filing bad faith petitions through referrals to petition preparers who then file petitions in violation of the Bankruptcy Code.

(*Id.*). These consolidated matters are set for hearing in April. While the jury demand was filed in Case Number 15-34173, it appears it is these consolidated matters for which Respondents seek a jury trial.

## Jurisdiction

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334. While claims under 11 U.S.C. §§ 110 and 526-528 are not enumerated core proceedings under 28 U.S.C. § 157, they invoke substantive rights established by the Bankruptcy Code. *In re Morrison*, 555 F.3d 473, 479 (5th Cir. 2009) ("Core proceedings are those that invoke a substantive right provided by title 11") (internal quotations omitted); *In re Harrelson*, 537 B.R. 16, 27 (M.D. Ala. 2015); *In re Kohlenberg*, 2012 WL 3292854 (N.D. Ohio Aug. 10, 2012).

## Analysis

The United States Trustee alleges violations of 11 U.S.C. §§ 110, 526, 527, and 528. These provide for actual damages, disgorgement of fees, fines, civil penalties, and injunctive relief if a violation is determined to have occurred. 11 U.S.C. § 110(j)-(k); 11 U.S.C. § 526(c)(5). As a threshold matter, neither § 110 nor §§ 526-528 create a statutory right to a jury trial. Consequently, the Court must determine whether a Seventh Amendment right to a jury trial attaches to these claims.

Respondents makes three arguments in support of their jury demand, (1) the Supreme Court has held that when a person who has not submitted a claim against the estate is sued by the

trustee to recover an allegedly fraudulent transfer, they are entitled to a jury trial; (2) the claims against the respondents are legal rather than equitable, entitling them to a jury trial, and (3) a jury trial is required when the Government seeks civil penalties and injunctive relief, as they do in this case. (ECF No. 71). The Court will address these arguments in turn.

The Court need not address the Respondent's first argument because a fraudulent transfer has not been alleged by the United States Trustee. Accordingly, the Court will proceed to the Respondent's remaining arguments.

The Seventh Amendment of the United States Constitution provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. "Suits at common law" refers to suits in which legal rights were to be ascertained and determined as opposed to suits where equitable rights alone are recognized and equitable remedies administered. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). However, even if a statutory cause of action is legal in nature, Congress may assign the adjudication to a non-Article III tribunal without permitting the litigant access to a jury trial if the action involves a public right. *Id.* at 53.

The analysis used to determine whether a cause of action is legal in nature, and thus accorded the right of jury trial, is familiar: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417-18 (1987). The second step of the analysis is more determinative than the first. *Granfinanciera*, 492 U.S. at 42.

The United States Trustee argues that the statutory causes of action against bankruptcy petition preparers and debt relief agencies for violations of the Bankruptcy Code are newly

created, and therefore not analogous to any 18th century action that would have been brought in a court of law. (ECF no. 70 at 8). She further argues that any monetary award allowed by the Code is so incidental or intertwined with injunctive relief so as to be equitable relief for the purpose of determining whether a right to a jury exists. (*Id.*); *Chauffers, Teamsters and Helpers, Local No 291 v. Terry*, 494 U.S. 558, 559 (1990) ("[A] monetary award incidental to or intertwined with injunctive relief may be equitable.") (internal quotations omitted).

The United States Trustee appears to be pursuing only the relief allowable under § 110 and §§ 526-528 of the Bankruptcy Code.[2] The Respondents argue that the relief sought is legal in nature, and more specifically, that a jury trial is required because the United States Trustee seeks civil penalties and injunctive relief. The Court must first determine whether the cause of action—violation of the statute—is analogous to an 18th century cause of action, and second, and more importantly, whether the remedies provided for in the statute are legal in nature.

The Respondents have not provided an 18th century cause of action to which the statutory claims are analogous, and after consideration the Court has been unable to identify one.

The Respondents' argument that injunctive relief is legal in nature and therefore entitled to jury consideration is without support in law. *In re Micron Separations, Inc.*, 220 B.R. 733 (Bankr. D. Mass. 1997) ("An action for injunctive relief is of course equitable [in] nature and hence does not implicate jury trial rights."); *In re Graves*, 279 B.R. 266 (B.A.P. 9th Cir. 2002) (finding no right to a jury trial for injunctive relief sought under § 110(j)). The remedy of disgorgement of profits provided for by § 110(h)(3) and § 526(c) is also equitable in nature. *See Chauffers*, 494 U.S. at 570 ("[W]e have characterized damages as equitable where they are

---

[2] For the purposes of this Memorandum Opinion, the Court assumes the relief sought by the United States Trustee is only that relief provided for by § 110 and §§ 526-528 of the Bankruptcy Code. To the extent additional relief is sought, this Memorandum Opinion does not determine any jury rights as to the additional relief.

restitutionary, such as in actions for disgorgement of improper profits.") (internal quotations omitted).

Whether the civil penalties and fines provided for in the statute are legal or equitable in nature is a closer question. "Generally, an award of money damages was the traditional form of relief offered in the courts of law." *Wooddell v. International Broth. of Elec. Workers, Local 71*, 502 U.S. 93, 97 (1991). An award of money is not determinative of whether the claim is legal or equitable, however. As addressed above, monetary awards that are restitutionary are equitable in nature. Additionally, monetary awards incidental to or intertwined with injunctive relief may be equitable. *Chauffers*, 494 U.S. at 571. However, civil penalties are designed to "exact punishment—a kind of remedy only available in courts of law." *Tull*, 481 U.S. at 422 n. 7 (1987). Respondents cite *Tull* for the proposition than civil penalties are legal in nature and therefore warrant a jury's consideration. (ECF No. 71 at 2).

In *Tull*, the Supreme Court held that a jury right attaches to the determination of liability under the Clean Water Act. *Tull*, 481 U.S. at 427 ("We conclude that the Seventh Amendment required that petitioner's demand for a jury trial be granted to determine his liability . . . ."). The Court also held that the Seventh Amendment does not require a jury trial to determine the *amount* of civil penalties assessed under the Act. *Id.* ("Since Congress itself may fix the civil penalties, it may delegate that determination to trial judges.").

However, civil penalties assessed under the Clean Water Act like those at issue in *Tull* may not receive the same treatment as civil penalties and fines provided for by the Bankruptcy Code. The differing treatment is a result of the application of the public rights exception. As the Supreme Court stated in *Granfinanciera*, "Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to

tribunals without statutory authority to employ juries as factfinders." *Granfinanciera*, 492 U.S. at 52. In *Curtis v. Loether*, 415 U.S. 189 (1974), the Supreme Court considered whether a statutory cause of action was accorded a jury trial under the Seventh Amendment. It stated:

> These cases uphold congressional power to entrust enforcement of statutory rights to an administrative process or specialized court of equity free from the strictures of the Seventh Amendment. But when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.

*Curtis v. Loether*, 415 U.S. at 195. As these cases demonstrate, even if a statutory cause of action is legal in nature, if it implicates a public right and Congress has assigned it to a non-Article III forum for adjudication, it does not mandate a right to a jury.

The public rights doctrine is linked to Congress' Article I power, and has particular force in the bankruptcy context. *In re Apex Long Term Acute Care—Katy, L.P.*, 465 B.R. 452, 458 (Bankr. S.D. Tex. 2011). Bankruptcy has traditionally been a distinctly public concern evidenced most significantly by its inclusion in the Article I of the Constitution. *See Katz*, 546 U.S. 356, 363 (2006); *See also Debt and Democracy: Towards a Constitutional Theory of Bankruptcy*, 83 Notre Dame L. Rev. 605, 647 (2008) ("Historically, financial distress was considered a public problem, which required public responses. The earliest forms of response were quintessentially public: incarceration in debtors' prison or worse. Relief from debt was also quintessentially public.").

There is no dispute that the claims associated with violations of § 110 and §§ 526-528 are novel claims established by the Bankruptcy Code designed to remedy a specific harm. The legislative history concerning these sections indicates that the purpose is to curtail the "abusive practices undertaken by attorneys as well as other bankruptcy professionals" and "strengthen

professionalism standards for attorneys and others who assist consumer debtors with their bankruptcy cases." *Milavetz, Gallop &* Milavetz*, P.A. v. U.S.*, 559 U.S. 229, 263 n. 3 (2010); 4 Collier on Bankruptcy ¶ 526.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Congress, through 28 U.S.C. § 157 has assigned the adjudication of these claims to bankruptcy courts.  28 U.S.C. § 157(a) ("[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

The public nature of the rights established in § 110 and §§ 526-528, Congress's stated purpose for enacting them, and Congress's enactment of § 157 assigning adjudication to bankruptcy courts—non-Article III courts—makes it plain that these statutory causes of action fall within the public rights exception, and do not carry with them a right to a jury trial.

## Conclusion

Actions against bankruptcy petition preparers and debt relief agencies for alleged violations of the Bankruptcy Code are so closely integrated into the public bankruptcy scheme, a Seventh Amendment jury right does not attach.  A separate order will be issued that denies a jury trial to Respondents.

SIGNED **March 30, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE